# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **LUIS IBANEZ**, | Case No. 3:11-cv-01518-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **SHAUN BETTAZZA**, an individual, and **FEDEX FREIGHT, INC.**, | |
| Defendants. | |

Nicole L. Robbins, Robbins Law Oregon, LLC, 10121 S.E. Sunnyside Road, Suite 300, Clackamas, OR 97015; William Keith Dozier , Jr., 385 First Street, Suite 215, Lake Oswego, OR 97034. Attorneys for Plaintiff.

Brian B. Williams and James L. Hiller, Hitt Hiller Monfils Williams LLP, 411 S.W. Second Avenue, Suite 400, Portland, OR 97204. Attorneys for Defendants.

**SIMON, District Judge**.

This case concerns an accident between two semi-tractor trailers. On January 4, 2010, at approximately 11:30 p.m., Interstate 84 in Eastern Oregon was covered in snow and ice. Joint Pretrial Order ("JPO") at § III, ¶ 7 (Dkt. 45). Plaintiff Luis Ibanez was parked at a designated "chain-up" area on the side of the Interstate, preparing to install chains on his semi-tractor trailer. *Id.* at § III, ¶ 8. At about the same time, Defendant Shaun Bettazza was driving a semi-tractor and double trailers owned and operated by Defendant FedEx Freight, Inc ("FedEx"), and approaching the chain-up area. *Id.* at § III, ¶ 6. As Mr. Bettazza passed Mr. Ibanez, the second trailer on Mr. Bettazza's truck crashed into Mr. Ibanez's truck. Dkt. 91 at 2. Defendants admit that at all material times Mr. Bettazza was acting within the course and scope of his employment

with FedEx, that Mr. Bettazza is solely at fault for the crash, and that Defendants are not

maintaining an affirmative defense of comparative fault. JPO at § III, ¶¶ 5, 10.

Plaintiff asserts three claims for relief: negligence against both Defendants for

Mr. Bettazza's conduct causing the accident; negligence against FedEx for allegedly failing

adequately to train and supervise Mr. Bettazza and for allegedly failing properly to maintain its

equipment; and negligence *per se* against both Defendants for allegedly violating certain state

and federal regulations. Second Amended Compl. (Dkt. 29). Plaintiff seeks economic and non-

economic personal injury damages. He also requests punitive damages on his first and second

claims based on a theory of extraordinary disregard of or indifference to known or highly

probable risks to others.

Before the Court are Defendants' motions for partial summary judgment against

Plaintiff's request for punitive damages, Dkt. 46, and Plaintiff's cross-motions for partial

summary judgment and spoliation sanctions. Dkt. 54. For the reasons discussed below, the Court

denies Defendants' motion with respect to Plaintiff's request for punitive damages against

Mr. Bettazza, but grants Defendants' motion with respect to Plaintiff's request for punitive

damages against FedEx. The Court also grants in part and denies in part Plaintiff's cross-

motions, as described below.

## BACKGROUND

On January 4, 2010, Mr. Bettazza was driving his truck from Boise, Idaho to Pendleton,

Oregon. After leaving Boise, Mr. Bettazza noticed that the "brakes on the back trailer were

sticky." First Bettazza Dep. at 30:17-24 (Dkt. 83). The brake malfunction caused "a delayed

reaction with the brakes on the back-trailer." Dkt. 93 at 3. According to Mr. Bettazza,

Interstate 84 was a "solid sheet of ice and snowpack." First Bettazza Dep. at 30:8. Mr. Bettazza

did not have chains on his truck at the time of the accident. *Id.* at 30:11-14. As Mr. Bettazza's truck passed Mr. Ibanez's truck, "[t]he brakes on the second trailer did not properly release and it slid into the plaintiff's trailer." Dkt. 91 at 2; First Bettazza Dep. at 35:13-24, 62:8-14. Michael Cameron, another professional truck driver who was stopped at the chain-up area, witnessed part of the accident. He states:

> I noticed [Mr. Bettazza's] truck hauling double trailers approaching the area at a very high rate of speed. He was going so fast that I was concerned for my safety and started to look around for an escape route. At about that time, I heard the sound of the crash[.]
>
> After the crash I saw [Mr. Bettaza's] truck continue past my truck and proceed on down the road. The rear portion of [Mr. Bettaza's] second trailer had been she[a]red off and what remained of the trailer was being dragged down the road. I estimate the speed of [Mr. Bettaza's] truck at that time to be 50 miles per hour. I then checked on Luis Ibanez, noticed that the crash had moved his entire truck and trailer forward approximately three feet, and I observed damage to his trailer.

Michael Cameron Decl. at ¶¶ 2-3 (Dkt. 104). Another witness, Plaintiff's expert Jenni Kebler, stated that the maximum safe speed given the conditions was 20 miles per hour. Jenni Kebler Decl. at ¶ 4 (Dkt. 105).

After the accident, an Oregon State Police Trooper cited Mr. Bettazza for careless driving, Or. Rev. Stat. § 811.135. Dkt. 77 at 15. FedEx field safety manager William Thomas and Plaintiff's expert Skip Nash testified that Mr. Bettazza was driving too fast for the conditions. William Thomas Dep. at 68:15-16 (Dkt. 85); Skip Nash Decl. at ¶ 4 (Dkt. 60); Dkt. 99 at 4. Mr. Nash also stated that Mr. Bettazza likely violated federal safety rules by "operating a commercial motor vehicle known to have equipment that is not functioning properly[.]" Nash Decl. at ¶ 5.

Mr. Bettazza was involved in another accident in which he struck a truck in 2009. Dkt. 68. In its review of that accident, FedEx determined that Mr. Bettazza "failed to allow [a] sufficient space cushion to avoid [the] vehicle ahead slowing for other stopped vehicles in the traffic lane." Dkt. 70. FedEx found that the accident was preventable and suspended Mr. Bettazza for three days. Dkts. 70-71; Thomas Dep. at 187:12-16. After the accident, FedEx required Mr. Bettazza to watch training videos and participate in an "educational session." Thomas Dep. at 187:17-15. Mr. Bettazza testified that he "got a lot of training" but did not review any videos that taught drivers "how to drive on heavy, dense fog and snow pack and ice." Second Bettazza Dep. at 27:16-17. Jon Barrett, FedEx's Senior Manager of Safety, testified that Mr. Bettazza received accident prevention education regarding adverse weather conditions. Jon Barrett Dep. at 35:5-7 (Dkt. 87).

In addition to the 2009 accident and the accident that is the subject of this case, Mr. Bettazza was involved in five other incidents: four in which he struck deer and one in which he ran over a tree in the road. Nash Dep. at 14:21-22 (Dkt. 88). In early 2009, FedEx safety manager Mr. Thomas performed a driver observation of Mr. Bettazza. Mr. Thomas observed Mr. Bettazza exceeding the speed limit and following other vehicles too closely for a portion of the observation period. Dkt. 73.

Plaintiff's expert Nash concluded that "FedEx failed to exercise appropriate supervision of [Mr.] Bettazza, retaining him in their service while ignoring indicators to the contrary." Dkt. 99 at 5. Mr. Nash also reviewed the safety records of FedEx drivers who drove the route between Boise, Idaho and Pendleton, Oregon. He found "direct evidence that [some FedEx drivers] were exceeding the allowable posted speed limits." Nash Dep. at 30:13-15; Dkt. 99 at 6. He also found that FedEx drivers had been involved in more accidents along the Boise-Pendleton

corridor than drivers from other companies. Nash Dep. at 36:14-23. In addition, Mr. Nash noted that FedEx "had a high rate of vehicle maintenance violations" as compared to other similar freight trucking companies. Nash Dep. at 84:25-86:4. Mr. Nash concluded that "FedEx failed to exercise all safety management controls at its disposal in the oversight of its drivers in the Boise, Idaho[] to Pendleton, Oregon corridor. In so doing, it is likely that an atmosphere of tolerance for exceeding legal speed limits was allowed to exist in that area." Dkt. 99 at 7.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient[.] " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotations and citation omitted).

## I.    Defendants' Motions for Partial Summary Judgment

Defendants admit that Mr. Bettazza caused the accident. JPO at § III, ¶ 10. The question presently before the Court is whether the evidence, viewed in the light most favorable to

Plaintiff, raises a genuine dispute of material fact regarding whether Defendants' conduct satisfies the standard for punitive damages. The Oregon Supreme Court has held that punitive damages are "a penalty for conduct that is culpable by reason of motive, intent, or extraordinary disregard of or indifference to known or highly probable risks to others." *Andor by Affatigato v. United Air Lines, Inc.*, 303 Or. 505, 517 (1987). To award punitive damages, a defendant's "degree of culpability" must be "greater than inattention or simple negligence." *Badger v. Paulson Inv. Co., Inc.*, 311 Or. 14, 28 (1991). In 1995, the Oregon legislature codified this standard. Oregon Revised Statute § 31.730(1) provides that punitive damages "are not recoverable in a civil action unless it is proven by clear and convincing evidence that the party against whom punitive damages are sought has acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others." Thus, where "the evidentiary record supports findings of *both* negligence *and* the additional factors of aggravated misconduct requisite for award of punitive damages, a punitive damages award may lie in connection with a negligence claim." *Jane Doe 130 v. Archdiocese of Portland in Oregon*, 717 F. Supp. 2d 1120, 1140 (D. Or. 2010) (emphasis in original).

### A.    Punitive damages claim against Mr. Bettazza

Plaintiff's evidence raises a genuine dispute of material fact regarding whether Mr. Bettazza's conduct justifies an award of punitive damages. Several factors support this conclusion. On the date of the accident, Mr. Bettazza was driving a semi-tractor and double trailers at night and on an interstate highway covered with snow and ice. Mr. Bettazza did not have chains on his tires. Notwithstanding the posted speed limit of 55 miles per hour, in light of the weather conditions, the safest maximum speed was 20 miles per hour. At the time of the

accident, Mr. Bettazza was driving at approximately 50 miles per hour. In addition, Mr. Bettazza

was aware that the brakes on his second trailer were malfunctioning.

Plaintiff's non-retained experts agree that the combination of those factors created a

serious and known risk to the health, safety, and welfare of others. Jenni Kebler, one of

Plaintiff's non-retained experts who witnessed the accident, described Mr. Bettazza's conduct as

"egregious":

> It is common knowledge that a driver should never operate a truck and
> trailer on a public roadway when the brakes on a trailer are sticking or
> locking up, regardless of road conditions. It presents a risk of danger to
> others. To do so while hauling double trailers on ice and snow without
> chains is egregious conduct that puts the safety of others in danger.

Dkt. 105. Another non-retained expert, Michael Cameron, stated that driving a "truck with

double trailers at 50 miles per hour on hard-packed snow and ice in the vicinity of other vehicles

and people is incredibly unsafe and places the safety of others in jeopardy." Cameron Decl.

at ¶ 8.

Although any single factor alone might not be sufficient, the combination of several

factors is sufficient to raise a genuine dispute of material fact as to whether Mr. Bettazza's

conduct justifies an award of punitive damages. In *Canton v. Hauge*, 72 Or. App. 548 (1985), the

Oregon Court of Appeals found that the combination of several factors, including the defendant's

speed and location, justified an award of punitive damages. In that case:

> The evidence show[ed] that defendant . . . drove at speeds of up to
> 90 miles per hour in an area where the designated speed was 35 miles per
> hour. It was about midnight. Visibility was restricted. [The defendant]
> failed to notice the rise in the pavement that, combined with his excessive
> speed, caused his car to skid out of control. The collision occurred in a
> residential and commercial area where major intersections are controlled
> by stop lights. . . . Although [the defendant's] blood alcohol level was only

.05, nevertheless the jury could have found that he was under the influence of alcohol.

*Id.* at 553 (internal footnote omitted). The Court of Appeals concluded that the "totality of the evidence presented a jury question whether [the defendant] was wantonly indifferent to the safety of other drivers and pedestrians as well as to the safety of plaintiff's decedent." *Id*. In the same way, the totality of evidence in this case raises a genuine dispute concerning whether punitive damages are appropriate. When the evidence is viewed in the light most favorable to Plaintiff, it shows that Mr. Bettazza drove a semi-tractor with double trailers on an interstate at more than twice the maximum safe speed. He did so, moreover, with the knowledge that the brakes on his second trailer were malfunctioning. That evidence reasonably could permit a finding that Mr. Bettazza showed a "reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others." Defendants' motion for summary judgment against Plaintiff's request for punitive damages against Mr. Bettazza is, therefore, denied.

### B.     Punitive damages claim against FedEx

Even when viewed in the light most favorable to Plaintiff, the evidence does not raise a genuine dispute of material fact sufficient to support an award of punitive damages against FedEx. In cases involving large company defendants, such as FedEx, "punitive damages serve the function to deter enterprises from accepting the risks of harming other private or public interests by recklessly substandard methods of operation at the cost of paying economic compensation to those who come forward to claim it." *Schmidt v. Pine Tree Land Dev. Co.*, 291 Or. 462, 466 (1981). To justify an award of punitive damages against a company, however, the company's "conduct must go beyond mere carelessness to a willful or reckless disregard of risk of harm to others of a magnitude evincing a high degree of social irresponsibility." *Id.*

Page 8 – OPINION AND ORDER

Plaintiff argues that FedEx's conduct meets this standard for two reasons. First, Plaintiff argues that FedEx retained and failed properly to supervise Mr. Bettazza. Pl.'s Opp'n to FedEx's Mot. at 24-26 (Dkt. 57). Second, Plaintiff argues that FedEx prioritized on-time delivery over safety. *Id*. at 26-31. With respect to Plaintiff's first argument, there is evidence that FedEx was aware that Mr. Bettazza had a troubled driving record. Mr. Bettazza was involved in a preventable accident in 2009. Furthermore, Mr. Bettazza hit several deer and once ran over a tree. Mr. Thomas observed Mr. Bettazza driving above the speed limit and following other vehicles too closely. The evidence also shows, however, that Mr. Bettazza's driving record was not egregious. Plaintiff's expert Nash stated that notwithstanding his record, Mr. Bettazza was "hirable" at trucking companies. FedEx's Mem. in Support at 4 (Dkt. 53). Moreover, FedEx took some action to supervise Mr. Bettazza. FedEx suspended Mr. Bettazza following his 2009 accident and Mr. Bettazza and other FedEx drivers received safety training. Nonetheless, Mr. Nash concluded that FedEx failed to do enough: "FedEx failed to exercise appropriate supervision of [Mr.] Bettazza, retaining him in their service while ignoring indicators to the contrary." Dkt. 99 at 5.

With respect to Plaintiff's second argument, there is some evidence that FedEx emphasized on-time delivery. Mr. Bettazza received raises for completing routes on time. Second Bettazza Dep. at 99:4-8. In addition, an internal FedEx report noted that some FedEx drivers "felt the priority was to get the freight to destination. When weather is bad, they keep going to maintain service." Dkt. 71 at 4. Mr. Nash concluded that "FedEx failed to exercise all safety management controls at its disposal in the oversight of its drivers in the Boise, Idaho, to Pendleton, Oregon corridor." Dkt. 99 at 7. The Court is unable to find any evidence, however, indicating that FedEx ever willfully or recklessly permitted its drivers to exceed the speed limit

or otherwise drive in a dangerous manner in order to make on-time deliveries. To the contrary, there is evidence that FedEx was concerned when its drivers broke the speed limit. For example, Mr. Thomas, a FedEx safety manager, spoke to Mr. Bettazza about driving too fast after observing him speeding. Dkt. 73. Plaintiff offers no evidence to refute this concern.

Plaintiff's evidence is sufficient to permit a jury to find that FedEx acted negligently, even if FedEx had not admitted liability. Under Oregon law, however, punitive damages are not appropriate unless a company's conduct goes "beyond mere carelessness" and "simple negligence." Mr. Nash's conclusions, even when fully credited, merely provide that FedEx failed to exercise all "safety management controls at its disposal." That conclusion does not suggest that FedEx operated with a "high degree of social irresponsibility." No evidence suggests, for example, that FedEx directed its drivers to speed. Nor does any evidence suggest that FedEx failed to provide safety training, supervision, and discipline for its drivers. In fact, the uncontroverted evidence shows that Fedex did just the opposite. Although FedEx's training, supervision, and discipline may have been deficient, those deficiencies merely support the conclusion that FedEx acted negligently. *See Andor by Affatigato v. United Air Lines, Inc.*, 303 Or. 505, 513-15 (1987) (punitive damages not appropriate where company allegedly disregarded risks to its passengers by deciding to save the costs of replacing a corroded bolt); *Shusterowitz v. Salem Associates, LLC*, CV-00-827-ST, 2001 WL 34039484, *8 (D. Or. Dec. 13, 2001) (punitive damages against company not appropriate even where company's employees negligently allowed patient to lose eleven pounds in one week).

During oral argument, Plaintiff submitted an additional brief arguing that two district court cases from other districts persuasively demonstrate that whether punitive damages should

be assessed against FedEx raises a genuine dispute for the jury.[1] Dkt. 117. In *Johnson v. ASK Trucking, LLC*, No. 09-4058, 2011 WL 1114247 (C.D. Ill. Mar. 25, 2011), evidence showed that a driver, Isserovich, received eight traffic violations in a five-year period before being hired by the defendant ASK Trucking. *Id.* at *2. After ASK hired Isserovich, he was cited for "numerous" violations of the Federal Motor Carrier Safety Regulations. *Id.* ASK did not provide any safety training and did not discipline Isserovich for his safety violations. *Id.* While driving for ASK, Isserovich struck a car on an interstate highway, injuring the occupants. *Id.* The injured parties brought an action in negligence, and ASK moved for partial summary judgment against the claim for punitive damages. The district court denied the motion. It found that "whether ASK was reckless or willful and wanton in employing [Isserovich], retaining him, and supervising him are conclusions that must be drawn from the evidence. Whether . . . ASK's conduct rose to the level of reckless or willful and wanton conduct is a question that must go to a jury." *Id.* at *6.

 *Johnson v. ASK Trucking* provides little guidance here because ASK's conduct was far more culpable than FedEx's conduct in this case. ASK provided *no* safety training and *never* disciplined Isserovich. In fact, the district court cited no evidence that ASK took any action at all to train or supervise Isserovich. A similar absence of training and supervision is not evident here. FedEx suspended Mr. Bettazza following his 2009 accident. It also sent a safety manager, Mr. Thomas, to observe his driving, and when Mr. Thomas observed Mr. Bettazza speeding and following other vehicles too closely, Mr. Thomas asked Mr. Bettazza to correct his driving. Evidence also showed that FedEx required Mr. Bettazza to watch safety training videos and participate in an education session. As discussed above, FedEx's supervision and training may

---

 [1] With the Court's permission, Defendants' filed a response. Dkt. 118.

have been deficient in some respects. Unlike ASK, however, FedEx provided some supervision and training.

The second case cited by Plaintiff is *Burke v. TransAm Trucking, Inc.*, 605 F. Supp. 2d 647 (M.D. Pa. 2009). Under Pennsylvania law, a plaintiff seeking punitive damages must demonstrate "(1) a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Id.* at 656. In *Burke*, there was evidence that the defendant truck driver had a history of speeding, driving for longer hours than permitted by regulations, and falsifying his log books. *Id.* at 652-55. The district court found that "a genuine issue of material fact exists as to Defendant TransAm's subjective appreciation of the risk of permitting [the driver] to drive despite his history of speeding, driving over hours and log falsification." *Id.* at 656. The court also found that the evidence could "demonstrate a conscious disregard of the risk of harm." *Id.*

Like *Johnson v. ASK Trucking*, this case is not persuasive. Oregon's standard for punitive damages is more stringent than Pennsylvania's standard. Pennsylvania law requires only that the defendant had a "subjective appreciation" of risk. Under Oregon law, the defendant must have more than an appreciation of a risk; it must also display both reckless and outrageous indifference to the risk. In *Burke*, the district court did not consider whether TransAm's appreciation of the risk posed by its driver was reckless and outrageous. Its conclusion that TransAm could be subject to punitive damages under Pennsylvania law is, therefore, of little guidance on the question of whether FedEx may be subject to punitive damages under Oregon law.

The evidence does not raise a genuine dispute of material fact regarding whether FedEx showed "a reckless and outrageous indifference to a highly unreasonable risk of harm."

Defendants' motion for summary judgment against Plaintiff's request for punitive damages against FedEx is, therefore, granted.

## II.    Plaintiff's Motions

Plaintiff's Cross-Motion for Partial Summary Judgment and Motion for Spoliation Sanctions asks the Court to enter an order stating that certain material facts are not genuinely in dispute and treating those facts as established in this case. Dkt. 54. Defendants have admitted liability, *see* JPO at Agreed Facts 5, 10, and 11, and Section V(B), but dispute both the amount of Plaintiff's actual damages and Plaintiff's right to recover punitive damages. Defendants oppose Plaintiff's motions and urge the Court "to wait until closer to trial, at which time the parties and the Court will know just what issues are actually still left in the case." Dkt. 112 at 2. Earlier in this Opinion and Order, however, the Court has ruled that Plaintiff may present to the jury the question of whether punitive damages should be awarded against Mr. Bettazza. The parties and the Court thus know what issues are actually still left in the case. Accordingly, the Court will address the merits of Plaintiff's motions.

Fed. R. Civ. P. 56(a) allows any party to move for summary judgment or for partial summary judgment on any claim or defense or on a "part of each claim or defense." In addition, Fed. R. Civ. P. 56(g) provides:

> *Failing to Grant All the Requested Relief.*  If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case.[2]

---

[2]  The substance of this rule was previously found in Fed. R. Civ. P. 56(d)(1) before the 2010 amendments to the Federal Rules of Civil Procedure, which, among other things, reorganized the subdivisions within many of the civil rules. The immediately preceding version of Rule 56(d)(1) provided: "If summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue. . . . It should then issue an order specifying what facts . . . are not genuinely at issue. The facts so

Fed. R. Civ. P. 56(g).

The Advisory Committee offers the following notes regarding Rule 56(g):

> *Subdivision (g).* Subdivision (g) applies when the court does not grant all the relief requested by a motion for summary judgment. It becomes relevant only after the court has applied the summary-judgment standard carried forward in subdivision (a) to each claim, defense, or part of a claim or defense, identified by the motion. Once that duty is discharged, the court may decide whether to apply the summary-judgment standard to dispose of a material fact that is not genuinely in dispute. *The court must take care that this determination does not interfere with a party's ability to accept a fact for purposes of the motion only.* A nonmovant, for example, may feel confident that a genuine dispute as to one or a few facts will defeat the motion, and prefer to avoid the cost of detailed response to all facts stated by the movant. This position should be available without running the risk that the fact will be taken as established under subdivision (g) or otherwise found to have been accepted for other purposes.
>
> If it is readily apparent that the court cannot grant all the relief requested by the motion, it may properly decide that the cost of determining whether some potential fact disputes may be eliminated by summary disposition is greater than the cost of resolving those disputes by other means, including trial. Even if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established. *The court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event.*

Fed. R. Civ. P. 56(g) Advisory Committee Notes to 2010 Amendments (emphasis added).

Plaintiff did not move for partial summary judgment with respect to any claim, defense, or part of a claim (*e.g.*, one or more essential elements of a cause of action). Instead, Plaintiff moves directly for an order treating certain "facts" as established in this case. This procedural posture heightens the need for the Court to proceed cautiously. Defendants, however, conceded during oral argument that many of the matters identified in Plaintiff's cross-motion for partial

---

specified must be treated as established in the action." Fed. R. Civ. P. 56(d)(1) (2009). Among other changes, the 2010 amendments modified the direction to the court from "should" to "may."

summary judgment are not genuinely in dispute. Where such concessions were made, the Court will confirm and order that such facts are established in this case.

Plaintiff's cross-motion for partial summary judgment asks the Court to treat eleven "facts" as established in this case. These facts are set forth in the parties' Joint Pretrial Order, Dkt. 45, and identified in Plaintiff's motion as: (a) First Claim for Relief contentions 2, 6-8, and 10-13; (b) Second Claim for Relief contention 11; and (c) Third Claim for Relief contentions 2 and 3. They are separately described and discussed as follows:

    A.    First Claim for Relief (Negligence Against Both Defendants)

        2.    *During defendant Bettazza's drive he noticed that the brakes on one of his trailers were not functioning properly, but he continued to drive towards his destination.*

During oral argument, Defendants conceded this fact. Accordingly, it is established in this case.

        6.    *The entire roadway in the chain up area was covered in snow and ice.*

During oral argument, Defendants conceded this fact. Accordingly, it is established in this case.

        7.    *While driving into the chain up area the brakes on defendant Bettazza's second trailer failed to properly release causing Bettazza to lose control of the trailer, which "jack-knifed" and struck the trailer attached to plaintiff Ibanez's tractor.*

During oral argument, Defendants conceded this fact. Accordingly, it is established in this case.

        8.    *At the time of the subject crash defendant Bettazza failed to maintain control of his vehicle.*

During oral argument, Defendants conceded this fact. Accordingly, it is established in this case.

> 10.    *Defendant Bettazza failed to drive his vehicle at a reasonable and safe speed in adverse weather and road conditions, as required by ORS 811.100 and 49 C.F.R. §§392.2, 392.14.*

During oral argument, Defendants conceded this fact as Plaintiff states it through the word "conditions." Accordingly, it is established in this case to that extent. What may be required under state law or federal regulations is a matter that the Court will address at trial through jury instructions, and the parties are free to propose whatever jury instructions they believe are appropriate and warranted under the law.

> 11.    *Defendant Bettazza operated his vehicle in a manner that endangered the safety of other persons and property, in violation of ORS 811.135, ORS 811.140 and 49 C.F.R. §392.2.*

During oral argument, Defendants conceded this fact as Plaintiff states it through the word "property." Accordingly, it is established in this case to that extent. What may be required under state law or federal regulations is a matter that the Court will address at trial through jury instructions, and the parties are free to propose whatever jury instructions they believe are appropriate and warranted under the law.

> 12.    *Defendant Bettazza failed to properly inspect his vehicle and trailers before entering the public roadway and thereafter to ensure that they were in proper working order, in violation of OAR 740-100-0010 and 49 C.F.R. §392.7.*

Defendants did not concede this fact during oral argument. Instead, Defendants explained that Mr. Bettazza will testify at trial regarding his "habit" concerning the proper inspection of his vehicle and trailers. *See* Fed. R. Evid. 406. The Court finds that a genuine dispute exists and that this matter is not appropriate for resolution on summary judgment. In addition, what may be required under state or federal regulations is a matter that the Court will address at trial through jury instructions, and the parties are free to propose whatever jury instructions they believe are appropriate and warranted under the law.

> 13. *Defendant Bettazza operated his semi-tractor trailer on public roads when he knew that the brakes on his trailer were not functioning properly, in violation of OAR 740-100-0010 and 49 C.F.R. §393.48.*

During oral argument, Defendants conceded this fact as Plaintiff states it through the word "properly." Accordingly, it is established in this case to that extent. What may be required under state or federal regulations is a matter that the Court will address at trial through jury instructions, and the parties are free to propose whatever jury instructions they believe are appropriate and warranted under the law.

B.    Second Claim for Relief (Negligence against Defendant FedEx Only)

> 11. *Defendant FedEx Freight, Inc. failed to ensure that its drivers adequately inspected their vehicles to be certain that its parts were in good working order, in violation of OAR 740-100-0010 and 49 C.F.R §§390.3 & 392.7.*

Defendants did not concede this fact during oral argument. The Court finds that a genuine dispute exists and that this matter is not appropriate for resolution on summary judgment. In addition, what may be required under state or federal regulations is a matter that the Court will address at trial through jury instructions, and the parties are free to propose whatever jury instructions they believe are appropriate and warranted under the law.

C.    Third Claim for Relief (Negligence *Per Se* Against Both Defendants)

> 2. *The regulations and statutes cited herein by plaintiff [referring to the First Claim for Relief contentions 10-13 and the Second Claim for Relief contention 11] were promulgated with the intent of protecting individuals similarly situation as plaintiff when travelling on public roadways.*

 Defendants did not concede this matter during oral argument. Plaintiff is asking the Court to find at summary judgment the nature of legislative or administrative "intent," and the Court declines to do so. What may have been the "intent" of a legislature or administrative agency in promulgating a statute or regulation may or may not be discernible, relevant, or

admissible. The parties are free to propose whatever jury instructions they believe are appropriate and warranted under the law.

> 3. *Defendants were per se negligent in violating the regulations and statutes cited herein by plaintiff [referring to the First Claim for Relief contentions 10-13 and the Second Claim for Relief contention 11].*

Defendants did not concede this matter during oral argument. In Plaintiff's Second Amended Complaint, Plaintiff alleges "negligence *per* se" as his third claim for relief. Dkt. 29 at 7. Defendants did not file an answer to that pleading. Instead, the parties filed their Joint Pretrial Order, which amends and supersedes the pleadings. *See* LR 16-5(d). As stated earlier, in the Joint Pretrial Order, Defendants admit liability for Plaintiff's compensatory damages but deny Plaintiff's right to recover punitive damages. Plaintiff does not seek punitive damages in his Third Claim for Relief, and whether Defendants were negligent *per se* has no bearing on the issue of punitive damages sought in Plaintiff's First or Second Claims. In addition, the Court is unaware of any differences between Plaintiff's First and Second Claims for Relief (which allege negligence) and Plaintiff's Third Claim for Relief (which alleges negligence *per se*) with regard to the standards for recovery of compensatory damages. Accordingly, whether Defendants were negligent *per se* has no legal relevance in light of Defendants' concession of liability for compensatory damages on Plaintiff's claims of negligence. The Court therefore declines to enter partial summary judgment under Rule 56(g) on this issue.

Finally, Plaintiff has filed an alternative motion for spoliation sanctions under the "court's inherent powers to make evidentiary rulings." Dkt. 54 at 2. In that motion, "Plaintiff seeks an order that the aforementioned contentions be decided as a matter of law based on the evidence provided in support of Plaintiff's Cross-Motion for Summary Judgment and based on Defendants' spoliation of relevant evidence." *Id.* Because that is the only relief requested by Plaintiff in his motion for spoliation sanctions and because the Court is already granting, to a

large extent, Plaintiff's Cross-Motion for Partial Summary Judgment, the Court will not further address Plaintiff's spoliation argument.

## CONCLUSION

Defendant's motion for partial summary judgment, Dkt. 46, is **GRANTED** as to Plaintiff's request for punitive damages against FedEx and **DENIED** as to Plaintiff's request for punitive damages against Mr. Bettazza. Plaintiff's cross-motion for partial summary judgment and spoliation sanctions, Dkt. 54, is **GRANTED IN PART AND DENIED IN PART** as stated in the Court's Opinion.

IT IS SO ORDERED.

Dated this 28th day of March, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge